## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RONALD HAWKINS #113478**                          **CIVIL ACTION**

**versus**                                          **NO. 05-6431**

**JAMES MILLER, JR., WARDEN, WCI**                  **SECTION: "A" (1)**

## REPORT AND RECOMMENDATION

    This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Ronald Hawkins, is a state prisoner incarcerated at the Rayburn Correctional Center, formerly known as the Washington Correctional Institute, Angie, Louisiana. On February 10, 2000, he was convicted of possession with intent to distribute marijuana in violation of La.Rev.Stat.Ann. § 40:966.[2]  On April 26, 2001, he pled guilty to being be a second offender and was sentenced as such to a term of twenty years imprisonment, with credit for time served.[3]  On June 26, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He filed a motion for reconsideration and rehearing en banc which was refused on July 31, 2002.[5]  He then filed with the Louisiana Supreme Court a related writ application which was denied on March 21, 2003.[6]

In November 2003, petitioner filed with the state district court an application for post-conviction relief [7] which was denied on December 4, 2003.[8]  He next filed with the Louisiana Fourth

---

[2]  State Rec., Vol. I of II, transcript of February 10, 2000, p. 149; State Rec., Vol. I of II, minute entry dated February 10, 2000; State Rec., Vol. I of II, jury verdict form.

[3]  State Rec., Vol. I of II, transcript of April 26, 2001; State Rec., Vol. I of II, minute entry dated April 26, 2001; State Rec., Vol. I of II, waiver of rights and plea form.

[4]  State v. Hawkins, No. 2001-KA-1815 (La. App. 4th Cir. June 26, 2002) (unpublished); State Rec., Vol. I of II.

[5]  State Rec., Vol. I of II.

[6]  State v. Hawkins, 840 So.2d 546 (La. 2003) (No. 2002-K-2303); State Rec., Vol. I of II.

[7]  State Rec., Vol. II of II.

[8]  State Rec., Vol. II of II, Judgment dated December 4, 2003.

Circuit Court of Appeal an application for supervisory writs[9] which was denied on March 22, 2004.[10]

He then filed with the Louisiana Supreme Court a related writ application[11] which was denied on

April 29, 2005.[12]

Petitioner also filed with the state district court a motion to correct and vacate his

multiple offender adjudication[13] which was denied on April 15, 2004.[14]  He next filed with the

Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ[15] which was denied

on June 4, 2004.[16]  He then filed with the Louisiana Supreme Court a related writ application[17] which

was denied on April 29, 2005.[18]

---

[9] State Rec., Vol. II of II.

[10] State v. Hawkins, No. 2004-K-0222 (La. App. 4th Cir. Mar. 22, 2004) (unpublished); State Rec., Vol. II of II.

[11] State Rec., Vol. II of II.

[12] State ex rel. Hawkins v. State, 901 So.2d 1048 (La. 2005) (No. 2004-KH-1237); State Rec., Vol. II of II.

[13] State Rec., Vol. II of II.

[14] State Rec., Vol. II of II, Judgment dated April 15, 2004.

[15] State Rec., Vol. II of II.

[16] State v. Hawkins, No. 2004-K-0720 (La. App. 4th Cir. June 4, 2004) (unpublished); State Rec., Vol. II of II.

[17] State Rec., Vol. II of II.

[18] State ex rel. Hawkins v. State, 901 So.2d 1061 (La. 2005) (No. 2004-KH-1815); State Rec., Vol. II of II.

On November 12, 2005, petitioner filed this federal application for *habeas corpus* relief.[19]  In support of his application, he raises the following claims:

1. Petitioner was denied the right to meaningful examination and/or cross-examination of Randy Lewis and Calvin Brazley; and

2. The trial court erred in failing to suppress evidence from petitioner's allegedly unlawful arrest.

The state concedes that petitioner's federal application was timely filed and that he exhausted his state court remedies.[20]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

---

[19]  Rec. Doc. 3.

[20]  Rec. Doc. 18.

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> On November 24, 1998, Officer Calvin Brazley was conducting undercover surveillance near North Dorgenois and Ursuline Streets in New Orleans.  Although he was alone at the time, he and Officer Randy Lewis were responding to hotline complaints concerning drug trafficking in the area.  Officer Brazley observed three occupants in a white vehicle smoking what he believed to be marijuana.  Officer Brazley followed the vehicle until it parked near a residence on St. Ann Street.  As Officer Brazley surveyed the scene,

he observed Hawkins exit a gate on the right side of the residence. Hawkins was wearing a black shirt and black jeans and carrying a bag with red contents, which he attempted to pass to another person standing behind the gate near the residence. Officer Brazley radioed Officer Lewis, and told him that he witnessed Hawkins hand a small bag of marijuana to another person. Officer Brazley then radioed other officers to move in and arrest Hawkins and the occupants of the white vehicle. Approximately two to three minutes after the takedown, Officer Brazley circled back in his car, and identified Hawkins by his clothing. No one in the area, other than Hawkins, was wearing a black shirt and black jeans.

When Officer Lewis arrived at the St. Ann Street residence, he observed Hawkins whose clothing matched the description supplied by Officer Brazley. Hawkins was still standing in front of the alleyway. Officer Lewis noted that there were two alleyways, one belonging to Hawkins' mother's house and the other belonging to the vacant house next door. The alleyway of the vacant lot was locked. Two other subjects accompanied Hawkins, one of whom had been a passenger in the white vehicle that Officer Brazley had followed. The officers detained the trio, and the remaining occupants of the white vehicle. Officer Lewis proceeded down the alleyway from which Officer Brazley had observed Hawkins exit. Officer Lewis encountered a pit bull dog chained behind a gate. The dog was barking and growling at him. Hawkins told Officer Lewis that the dog belonged to him and that the animal would respond only to Hawkins. Officer Lewis instructed Hawkins to relocate the animal, and Hawkins complied. Officer Lewis continued down a pathway that came from the abandoned alleyway and discovered under the rear steps of the vacant house adjacent to the alleyway a plastic bag containing twenty-three small red Ziploc bags, each containing marijuana. The packets fit the description of red-tinted, small Ziploc bags that Officer Brazley had earlier described to Officer Lewis. Thereafter, Officer Lewis arrested Hawkins, and as he radioed his police station, he heard his call broadcast from a nearby car. The car contained a police scanner, which was picking up Officer Lewis' call. Hawkins informed Officer Lewis that the vehicle which he used belonged to his girlfriend, but that the scanner belonged to him. Officer Lewis confiscated $546 from Hawkins' pants pocket at the time of his arrest.

The State and the defense stipulated at trial that if Criminalist Teresa Lamb, an expert in the identification of narcotics, were called

to testify, she would verify that the green vegetable matter in the twenty-three plastic bags seized in this case proved to be marijuana.

Hawkins' mother, Ms. Miriam Nelson, testified at trial that she was home at the time of her son's arrest.  She described his clothing as a white, tank t-shirt and black, short, cutoff jeans.  Ms. Nelson denied that the alleyway of the vacant house was locked the day of the arrest.

Ms. Jonnay George, Hawkins' girlfriend, testified at trial that the day Hawkins was arrested, she rode with him in her car to her appointment with the hairdresser while Hawkins babysat her nine-year old son.  After Hawkins' arrest, Ms. George's son told her that he had found a walkie-talkie and had been playing with it in her car.  Ms. George further testified at trial that she had given Hawkins $700 to deposit into her checking account on the day of the arrest.

Hawkins' aunt, Ms. Ethel Nelson, testified at trial that at the time of his arrest, he had been living with her for many years.  On the day of his arrest, Ms. Nelson saw Hawkins leave the house around 10:00 a.m. wearing a white tank top, black jeans and black tennis shoes.[21]

<u>Examination of Witnesses</u>

Officer Brazley was not called to testify either by the prosecution or the defense at the suppression hearing.  It is argued that the failure to call Brazley violated petitioner's rights because he was unable to question the officer.  It is further argued that if Brazley had testified, it would have been apparent that Officer Lewis was lying at the suppression hearing; therefore, petitioner opines that the failure to call Brazley resulted in the defense being unable to adequately cross-examine Lewis to impeach his testimony.

In the post-conviction proceedings, the state district court rejected this claim, noting: "The defendant was free to subpoena Officer Calvin Brazley to obtain his testimony.  La.C.Cr.P.

---

[21] <u>State v. Hawkins</u>, No. 2001-KA-1815, at pp. 1-4 (La. App. 4th Cir. June 26, 2002) (unpublished); State Rec., Vol. I of II.

Art. 294, 731."[22]   The Louisiana Fourth Circuit Court of Appeal found "no error" in that ruling,[23] and the Louisiana Supreme Court denied the related writ application without comment.[24]

The state district court's decision, though succinct, says it all.  Petitioner was not denied the opportunity to subpoena Brazely to testify at the suppression hearing.  On the contrary, for whatever reason, the defense counsel chose to forego that opportunity.  Therefore, Brazley's failure to testify resulted not from any action of the court or the prosecution; rather, it resulted solely from the defense's inaction.  Accordingly, there was no violation of petitioner's constitutional rights.[25]

To the extent that petitioner is alleging that he was not afforded an adequate opportunity to cross-examine Lewis, that claim is disproven by the transcript.  This Court notes that the Sixth Amendment guarantees to criminal defendants the right to conduct cross-examination, and a trial court's discretionary authority to limit such cross-examination comes into play only after sufficient cross-examination has been allowed.  See, e.g., Smith v. Collins, 964 F.2d 483, 486 (5th

---

[22]  State Rec., Vol. II of II, Judgment dated December 4, 2003.

[23]  State v. Hawkins, No. 2004-K-0222 (La. App. 4th Cir. Mar. 22, 2004) (unpublished); State Rec., Vol. II of II.

[24]  State ex rel. Hawkins v. State, 901 So.2d 1048 (La. 2005) (No. 2004-KH-1237); State Rec., Vol. II of II.

[25]  The undersigned expressly notes that petitioner has never argued that his counsel was ineffective in failing to subpoena Brazley.  Moreover, lest he be tempted to move to amend his petition to assert such a claim, it is noted that the claim may not now be asserted in this Court because it would be unexhausted.  28 U.S.C. § 2254(b)(1)(A).  Moreover, it appears that petitioner would also be barred from asserting such a claim in state court.  See La.C.Crim.P. arts. 930.4(E) and 930.8.

- 8 -

Cir. 1992).  In the instant case, however, the trial court clearly did not unduly limit the cross-examination of Lewis.  To the contrary, defense counsel was given great latitude in conducting his cross-examination, and Lewis testified on cross more than twice as long as on direct examination.[26]  Any suggestion that petitioner's rights were violated in this regard are patently meritless.

The Court notes that petitioner also appears to argue that the prosecution was aware that Lewis testified falsely at the suppression hearing and allowed that false testimony to stand uncorrected.  To the extent that petitioner means to assert that as a separate claim, the Court, out of an abundance of caution, notes that the claim has no merit.

For a petitioner to establish that his right to due process has been violated by the introduction of perjured testimony, "it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements."  Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir. 2002).  Rather, petitioner "must show (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false."  Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001).

In the instant case, there is no evidence that Lewis testified falsely.  Petitioner argues that Lewis falsely stated that Brazley told him that petitioner was seen distributing marijuana.  Petitioner argues that at trial Brazley contradicted that testimony.  That is simply untrue.

At trial, Brazley testified that he was conducting undercover surveillance in connection with a complaint of drug activity.  During his surveillance of a white vehicle occupied

---

[26] Lewis' testimony at the suppression hearing comprises some thirty-three pages of the transcript, approximately *twenty-four* pages of which is devoted to cross-examination. State Rec., Vol. I of II, transcript of February 26, 1999, pp. 2-34.

by persons believed to be smoking marijuana, Brazley saw "a subject with a black shirt and black

pants exit the gate on the side of a house."[27]  He continued:

> A.      ... He had on a black shirt and black jeans.  He had a bag in
> his hand and I could see the contents, whatever it was inside
> was red.  And he was reaching – he was attempting to give
> another subject inside the – on the side of the gate what was
> inside of the bag.  As I stated I couldn't stop and I'm driving
> by.  I told the officers to come get the subjects in the vehicle
> and to also stop and investigate the persons on the – by the
> house with the bag and see what was – the contents inside of
> that bag.  I then proceeded – continued up Saint Ann and
> made a left turn on Prieur.
>
> Q.      And when you called for the officers to takedown the people
> in the vehicle as well as the person with the black shirt what
> description did you give them?
>
> A.      I told them that the subject by the gate had a black shirt
> almost like a – not really – not with too much sleeves on it.
> It was a black shirt and it was outside of his pants and he had
> on blue jeans – I mean black jeans.  He had just – He had just
> exited the gate.  And as I'm driving by, I caught a glimpse of
> him out of my right side.  I see the bag in his hand and the
> contents, whatever it was inside was red.  And there was a
> subject intending to receive something from him.  At that
> point I told officers to stop and investigate that also.[28]

The fair reading of Brazley's testimony, taken in context and as a whole, is that he was conducting

surveillance regarding alleged drug activity in the neighborhood.  During that surveillance, he

observed petitioner engage in suspicious activity believed to be a drug transaction.  Brazley then

reported what he saw and asked other officers, including Lewis, to investigate.  That testimony in

---

[27]  State Rec., Vol. I of II, transcript of February 10, 2000, p. 19.

[28]  State Rec., Vol. I of II, transcript of February 10, 2000, p. 20.

no way conflicts with Lewis' testimony at the suppression hearing.  In the instant case, there is no evidence whatsoever that Lewis testified falsely, much less than the prosecution was aware of any perjury.

<u>Denial of Motion to Suppress</u>

Petitioner claims that the trial court erred when it denied the defense motion to suppress evidence.  That claim, which is based on the Fourth Amendment to the United States Constitution, is not reviewable in this federal proceeding.

In <u>Stone v. Powell</u>, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  <u>Id</u>. at 494 (footnote omitted); <u>see also</u> <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002).  The <u>Stone</u> bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous.  <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324 (5th Cir. 1978).

The United States Fifth Circuit Court of Appeals has interpreted "full and fair" consideration of a Fourth Amendment claim to include the availability of "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when the facts are in dispute, and full consideration by an appellate court when the facts are not in dispute." <u>Caver v. Alabama</u>, 577 F.2d 1188, 1191 (5th Cir. 1978) (construing <u>O'Berry v. Wainwright</u>, 546 F.2d 1204, 1213 (5th Cir. 1977)).  The "opportunity" for full and fair litigation exists as long as the state provides the petitioner with processes by which he can obtain full and fair consideration, without

regard to whether he actually utilizes those processes.  Caver, 577 F.2d at 1192 ("An 'opportunity

for full and fair litigation' means just that: an opportunity."); see also Janecka, 301 F.3d at 320.

In the instant case, petitioner's counsel filed a motion to suppress.  On February 26, 1999,

an evidentiary hearing was held on the motion, and the matter was taken under advisement.[29]  On

April 1, 1999, the motion was denied.[30]  Petitioner challenged that ruling on direct appeal, and the

Louisiana Fourth Circuit Court of Appeal held:

> In his final assignment of error, Hawkins argues that the
> district court erred in denying his Motion to Suppress the evidence.
> He maintains that the officers lacked probable cause for his arrest,
> and that they had no warrant allowing them to search his mother's
> property; hence, the evidence seized from his person and the yard
> were obtained pursuant to illegal searches.
>
> Art. 213 of the Criminal Code of Procedure authorizes a
> policeman to arrest a person who has committed an offense in his
> presence.  Probable cause exists when the facts and circumstances
> known to the officers and of which they have reasonably trustworthy
> information are sufficient to justify the belief by a man of ordinary
> caution that the suspect has committed or is committing a crime.
> State v. Daniel, 2001-1736 (La. App. 4 Cir. 2/13/02), 811 So.2d 84.
> Incident to a lawful arrest, the officer may lawfully conduct a full
> search of the arrestee and the area within his immediate control for
> weapons and for evidence of a crime.  State v. Fontaine, 2001-1291
> (La. App. 4 Cir. 3/6/02), 814 So.2d 592.
>
> In Hawkins' case, the money and other contraband
> confiscated from him were recovered pursuant to the arrest.  The
> officers had probable cause to arrest Hawkins after Officer Brazley
> witnessed him transfer a red ziplocked packet of marijuana to another
> individual.  Furthermore, even to the extent that Hawkins incorrectly
> alleges that the officers at this point merely had reasonable suspicion

---

[29]  State Rec., Vol. I of II, transcript of February 26, 1999; State Rec., Vol. I of II, minute entry
dated February 26, 1999.

[30]  State Rec., Vol. I of II, transcript of April 1, 1999; State Rec., Vol. I of II, minute entry dated
April 1, 1999.

to stop him, the officers gained additional information to confirm that Hawkins possessed marijuana once they discovered his stash at the abandoned property.

As to Hawkins' claims of violation of his privacy rights as a result of the search of his mother's property, whether a defendant has a constitutionally protected expectation of privacy involves a two part inquiry: (1) a defendant must first show that he has a reasonable expectation of privacy in the area searched for the items seized; and (2) a defendant must also show that society is prepared to accept the expectation of privacy as objectively reasonable. State v. Ragsdale, 381 So.2d 492, 497 (La. 1980); State v. Hamilton, 2000-1176 (La. App. 4 Cir. 9/13/00), 770 So.2d 413. Defendant's expectation of privacy, namely that he is entitled to place illegal contraband onto the property of others without government intrusion, is not recognized by society as reasonable. State v. Campbell, 93-1959 (La. App. 4 Cir. 5/26/94), 640 So.2d 622. A defendant has no expectation of privacy in the neighbor's back yard. State v. Harper, 27,278 (La. App. 2 Cir. 8/23/95), 660 So.2d 537.

In the instant case, the area searched was the open area of the alleyway and the steps of the neighboring house, not Hawkins' property. Moreover, the neighboring house was abandoned property, thus eliminating any reasonable expectation for anyone, including Hawkins. The officers recovered the contraband without violating anyone's rights.

Hawkins further argues that the officers also made an illegal search when they accessed the abandoned property by briefly traversing the alleyway of his mother's house. At best, the alleyway constitutes "curtilage" of his mother's house. Although "curtilage" is entitled to some protection of privacy, this expectation is reduced. State v. Brisban, 2000-3437 (La. 2/26/02), 809 So.2d 923. More importantly, there was no search of, nor evidence recovered from, Hawkins' mother's property. Furthermore, officers had exigent circumstances to access the abandoned property through Hawkins' mother's alleyway in order to retrieve the contraband. This assignment is without merit.[31]

The Louisiana Supreme Court denied the related writ application without comment.[32]

---

[31] State v. Hawkins, No. 2001-KA-1815, at pp. 10-11; State Rec., Vol. I of II.

[32] State v. Hawkins, 840 So.2d 546 (La. 2003) (No. 2002-K-2303); State Rec., Vol. I of II.

Because petitioner was provided an evidentiary hearing on his motion to suppress and appellate review of the denial of that motion, <u>Stone</u> dictates that he may not now relitigate the claim in this Court.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Ronald Hawkins be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-third day of October, 2006.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

- 14 -